Filed 8/27/15  Gardner v. Roeder CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ALAN GARDNER,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>JOHN WALTER ROEDER et al.,<br><br>    Defendants and Respondents. | H038407<br>(Santa Clara County<br>Super. Ct. No. CV216725) |

Plaintiff Alan Gardner brought this action against defendant John Walter Roeder alleging that Roeder had breached a settlement agreement by bringing a lawsuit based upon claims that, according to Gardner, Roeder had released.  Roeder responded with an anti-SLAPP motion (Code Civ. Proc., § 425.16), which the trial court granted.  Gardner contends that this was error because, even though Roeder was not a named releasor in the settlement agreement, one of the parties was acting as his alter ego.  We find no error, and affirm.

## BACKGROUND

According to the complaint, this is the fourth of four related lawsuits.  The first two had their genesis in Gardner's employment by Great Oaks Water Company (Great Oaks) as its Chief Operating Officer from November 2001 to September 2006.  He alleges that respondent Roeder was Great Oaks's "[O]wner, Chief Executive Officer . . .

and controlling shareholder," as well as its "Chairman of the Board of Directors." Upon Gardner's separation from employment, he alleges, he filed suit against Great Oaks—apparently for employment discrimination—and Great Oaks countersued for "breach of confidential relationship, civil extortion, defamation and declaratory relief." The parties settled these actions and executed the mutual release on which this lawsuit is based.

The third suit was filed six weeks later, when Roeder sued Gardner on what are alleged to be "the identical causes of actions previously released between the parties." (Italics and underlining omitted.) Based on this conduct, Gardner brought the present action (suit number four) against Roeder, charging him with breach of contract and unfair business practices in violation of Business and Professions Code section 17200.

Roeder moved to strike the complaint pursuant to the anti-SLAPP law, Code of Civil Procedure section 425.16. The trial court granted the motion and entered judgment for Roeder. Gardner filed this timely appeal.

## DISCUSSION

"The anti-SLAPP law authorizes a defendant to bring a 'Special Motion to Strike' any cause of action 'arising from any act of [the defendant] in furtherance of [the defendant's] right of petition or free speech . . . in connection with a public issue.' (§ 425.16, subd. (b)(1).)" (*Old Republic Construction Program Group v. Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859, 866, review denied, Feb. 11,2015.) The statute "mandates a two-step analysis. The first step is to determine whether the moving party has shown that the targeted cause of action arises from conduct protected by the statute. [Citation.] If the answer is yes, the court considers whether the plaintiff has established the requisite probability of success. [Citation.] As to both questions, a reviewing court applies its independent judgment, without deference to the trial court's ruling. [Citation.]" (*Ibid.*)

2

Gardner does not challenge the trial court's finding that the present suit arises from conduct protected by the statute, i.e., Roeder's filing of a lawsuit, which was of course an exercise of the right of petition.  The entire question on appeal is whether Gardner demonstrated a likelihood of success on the merits.  The trial court found that he did not, because the release by its terms was not binding on Roeder, and because Gardner presented no evidence substantiating the naked allegation that Great Oaks was an alter ego for Roeder.  No error appears in either determination.

Gardner repeatedly asserts that the release is "binding on . . . Great Oaks and 'its officers, employees, agents, attorneys, representatives, successors and assigns.' " (Italics omitted.)  It is not.  The quoted phrase describes not the persons *bound* by the release, but those *benefited* by it—the releasees, not the releasors.[1]  The only releasors identified in the instrument are Gardner and Great Oaks.  The release might be argued to bind Great Oaks's "successors in interest," in that it releases Gardner from claims "which Great Oaks Water Company, A California Corporation or its successors in interest now own or hold, or have at any time heretofore owned or held, or may at any time, own or hold . . . ."  But nothing in the release purports to bind any other person.  If it failed to

---

[1]  The release of Gardner states in relevant part that "Great Oaks Water Company, a California Corporation, hereby releases and forever discharges Alan Joel Gardner as well as his agents, attorneys, representatives, successors. and assigns, and each of them, of and from any and all liabilities . . . arising in law, equity, or otherwise, . . . which Great Oaks Water Company, A California Corporation or its successors in interest now own or hold, or have at any time heretofore owned or held, or may at any time, own or hold by reason of any matter or thing arising from, any cause whatsoever prior to the date of execution of this Agreement . . . ."

Gardner's release of Great Oaks was similarly limited:  "Alan Joel Gardner hereby releases and forever discharges  Great Oaks Water Company, a California Corporation, as well as its officers, employees, agents, attorneys, representatives, successors, and assigns, and each of them, of and from any and all liabilities . . . by reason of any matter or thing arising from any cause whatsoever prior to the date of execution of this Agreement . . . ."

accurately reflect the mutual intentions of the parties due to some cognizable ground for relief such as mutual mistake, the remedy was to seek such relief, not to file a claim for damages predicated on a misconstruction of the release's terms.

Nor did Gardner offer any evidence in support of the premise that Great Oaks executed the release as an alter ego for Roeder. "In California, two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone. [Citations.] 'Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other.' [Citations.] Other factors which have been described in the case law include inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers. [Citations.] No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied. [Citation.] Alter ego is an extreme remedy, sparingly used. [Citation.]" (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538-539.)

Gardner made no attempt to establish any of the foregoing factors. This cannot be attributed to justifiable ignorance; as Great Oaks's chief operating officer for nearly five years, he was presumably familiar with the handling of its funds and assets, capitalization, observance *vel non* of corporate formalities, and so on. In any event he made no attempt to establish justifiable ignorance on any of those points. He simply declared that Roeder "was the Chairman of the Board of Directors and Chief Executive

4

Officer . . . , owner, and alter ego of [Great Oaks]." This of course is backwards; the question is not whether Roeder was the alter ego of the entity, such that his separate legal personality should be disregarded, but whether the Great Oaks was the alter ego of Roeder, such that its release of Gardner was in effect a release by Gardner. The complaint alleges, more pertinently, that Great Oaks "is the alter ego for its owner, Chief Executive Officer, and Chairman of the Board of Directors, and controlling share holder" Roeder. But both the allegation and the later averment were naked conclusions of law. " 'The allegation that a corporation is the *alter ego* of the individual stockholder is insufficient to justify the court in disregarding the corporate entity in the absence of allegations of facts from which it appears that justice cannot otherwise be accomplished.' " (*Vasey v. California Dance Co.* (1977) 70 Cal.App.3d 742, 749, quoting *Meadows v. Emett & Chandler* (1950) 99 Cal.App.2d 496, 498-499.) "Mere ownership of all the stock and control and management of a corporation by one or two individuals is not of itself sufficient to cause the courts to disregard the corporate entity." (*Meadows v. Emett & Chandler, supra*, 99 Cal.App.2d at p. 499.)

Gardner alleged that Roeder "[h]as a habit of treating corporations as his alter ego," and, in apparent support of that allegation, that Canadian regulators found him to have engaged in certain conduct that resulted in his being "banned from the [British Columbia] securities market for seventeen (17) years." The implication, apparently seemed to suggest that a finding of alter ego status is warranted by a decision of the British Columbia Securities Commission concerning Roeder's dealings with respect to a Canadian enterprise in which he was involved. Assuming any of this were competently established, its only conceivable relevance would be to show bad character or, more specifically, a predisposition to abuse the corporate fiction. But of course the general rule is that "evidence of a person's character or a trait of his or her character . . . is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid.

5

Code, § 1101, subd. (a).) Evidence of other misconduct may be admissible "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than . . . disposition to commit such an act." (*Id*., subd. (b).) But apart from Great Oaks's execution of the release at issue here, Gardner never pointed to any specific fact, disputed or otherwise, that he contended would justify disregard of Great Oaks's separate legal personality. Thus the only apparent relevance of the Canadian proceedings was to show that he was the sort of person who disregards the corporate form, and should therefore be found to have done so here. Since this is a prohibited inference, the evidence was inadmissible, and the trial court quite properly ignored it. Echoing the complaint, Gardner asserted in opposition to the anti-SLAPP motion that Roeder had a "habit" of disregarding the corporate form. But again, evidence of habitually behaving in a certain manner is admissible, if at all, "to prove *conduct on a specified occasion* in conformity with the habit or custom." (Evid. Code, § 1105, italics added.) Gardner never attempted to specify any occasion on which Roeder disregarded the separate corporate personality of Great Oaks.

The only specific factual assertion offered by Gardner in support of the alter ego claim is the allegation that Roeder had "use[d]" Great Oaks "to perpetrate a fraud or accomplish [an] other wrongful or inequitable act" by "fraudulently inducing Mr. Gardner to settle all claims against Great Oaks and its owners, agents etc. only to sue Mr. Gardner again for the exact same causes of actions." This assertion was repeated in opposition to the SLAPP motion, but no factual foundation for it was offered. We find no suggestion in the record that Gardner was justifiably misled as to the scope of the release. If anything, his own proofs tend to establish the opposite. Attached to his declaration is an e-mail exchange in which counsel for Great Oaks proposed terms for a settlement of the original lawsuits. He wrote that the proposal "does not include any

6

releases or waivers by any party as to any claims except by and between Alan Gardner and [Great Oaks] as to any and all wage claims by Gardner." Counsel for Gardner rejected the offer, stating among other things that he was surprised at the failure to offer a "general release." He continued: "If your clients do not wish to enter into a mutual general release, one can only wonder what future litigation they have in mind. Mr. Gardner considers this a real threat and is prepared to fight fire with fire." He then referred to "a list of the actions he is prepared to take in response to future litigation"—a list not included in the copy of the message in the record.

Counsel for Great Oaks thus straightforwardly communicated his client's unwillingness to release any claims other than its own What further communications may have preceded the parties' execution of the settlement agreement is not disclosed by the record. What clearly appears, however, is that Gardner was on notice that the scope of the release was an issue. Thus, even if he had shown that he executed the release in reliance on some deceptive statement or omission by Great Oaks about its scope, he would have a difficult time persuading any trier of fact that the reliance was reasonable.

Having been clearly informed of Great Oaks's intentions, Gardner was obliged for his own protection to read and understand the release, and to reject it if it failed to accurately manifest his own intentions. This lawsuit is predicated on investing the release with a meaning it simply does not possess. The trial court properly found that it lacked the requisite probability of success.

## DISPOSITION

The judgment is affirmed.

7

_____
                   RUSHING, P. J.

WE CONCUR:

_____
     ELIA, J.

_____
     WALSH, J.[*]

*Gardner v. Roeder et al.*
**H038407**

---

[*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8